# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| VEGA ASSET RECOVERY, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 17 C 1332 |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| NEWEDGE USA, LLC, n/k/a SG ) | |
| AMERICAS SECURITIES, LLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

In August of 2007, plaintiff Vega Asset Recovery, LLC ("Vega") sustained substantial losses while trading on the Russell 2000 Index. Years later, Vega initiated arbitration proceedings with the Financial Industry Regulatory Authority ("FINRA") against defendant Newedge USA, LLC[1] n/k/a SG Americas Securities, LLC ("Newedge"). Following a four-day arbitration hearing, the arbitration panel denied Vega's claim and Newedge's counterclaims. Dissatisfied with the result, Vega filed an application to vacate the arbitration award with this Court. Newedge responded and filed a motion to confirm the award.

Before the Court is Vega's application to vacate arbitration award of FINRA [1], as well as defendant Newedge's motion to confirm arbitration award [14]. For the reasons set forth below, the Court denies Vega's application, grants Newedge's motion, and confirms the arbitration award.

## BACKGROUND

In August of 2007, the trading market was experiencing a historic period of extreme volatility. On August 16, 2007, Vega lost approximately $26 million (75% of its trading capital) while trading options based on the Russell 2000 Index.

On July 25, 2013, pursuant to an Account Agreement,[2] Vega initiated a claim with FINRA, alleging that Newedge had caused Vega to incur those losses. Newedge filed a counterclaim, alleging that it was entitled to indemnification and requested an award of costs and attorneys' fees.

---

[1] Newedge USA, LLC was previously known as Fimat USA, LLC.
[2] In March 2007, Vega and Newedge entered into an Account Agreement which required them to arbitrate any controversies arising between them. (Dkt. 1-1, Ex. 1, ¶ 70.) The Account Agreement required any arbitration to be conducted "before arbitration facilities provided by any exchange that [Newedge] is a member [of] or the National Association of Securities Dealers, Inc." (*Id*.) The

Shortly after the initiation of the arbitration process and after the parties had submitted their rankings from a list of arbitrators, FINRA appointed a panel of three arbitrators (the "Panel"). The Panel consisted of three FINRA members: Daniel R. Formeller (an attorney licensed since 1976, who was designated as the Chairperson), Jeffrey W. Finke (an attorney licensed since 1977), and Henry G. Nothnagel (a former broker and trader with 37 years of experience). Arbitrators in FINRA cases are classified as either "non-public" or "public." *See* FINRA Rule 12100. Formeller and Finke were classified as "public" arbitrators, and Nothnagel was classified as a "non-public" arbitrator.

In 2015, during the pendency of the underlying arbitration proceedings, the SEC amended the definitions for "non-public" and "public" arbitrators. The amendment became effective on June 26, 2015 and was not retroactive. *See* FINRA Reg. Notice 15-18 ("for cases in which FINRA sent lists prior to June 26, 2015, FINRA will not change the classification status of non-public and public arbitrators based on the new definitions, and will not grant challenges for cause based solely on an arbitrator's reclassification.").

In September 2016, the parties participated in a four-day arbitration hearing before the Panel in Chicago, Illinois. On October 3, 2016, the Panel ordered the parties to submit post-hearing briefing on certain issues by October 31, 2016. On October 18, 2016, a FINRA case administrator notified the parties that Arbitrator Finke was no longer classified as a "public arbitrator" under FINRA's revised arbitrator definition because Finke's firm derived $50,000 or more, or at least 10 percent of its annual revenue from entities associated with the financial industry. (Dkt. 13-1, Ex. 18.) On November 8, 2016, the Panel formally closed the arbitration hearing.

On December 21, 2016,[3] the Panel entered the Award of Arbitrators (the "Award"). The Award states that the claim involved a public customer dispute and that a majority-public panel decided the case. The Award notes that Vega asserted several causes of action[4] and that Newedge claimed indemnification. In issuing the Award, the Panel denied Vega's claims, denied

---

National Association of Securities Dealers, Inc. is the predecessor to FINRA. *See Birkelbach v. S.E.C.*, 751 F.3d 472, 474 (7th Cir. 2014). The Account Agreement further required the parties to follow the rules of the arbitration forum. (Dkt. 1-1, Ex. 1, ¶ 69(G).) Because Vega initiated the arbitration proceedings with FINRA, FINRA rules applied to the underlying proceedings.

[3] Vega says that the Award was entered on December 21, 2016, whereas Newedge says that the Award was entered on December 19, 2016. (Dkt. 1-1, Ex. 2, pg. 33.) The date of entry does not affect the Court's analysis. For purposes of consistency, the Court will refer to the Award as being entered on December 21, 2016.

[4] Vega asserted the following claims: "violation of section 10(b) of the Securities Exchange Act of 1934 and violation of Securities Exchange Commission Rule 10b-5, violation of the Illinois Securities Law of 1953, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, violation of FINRA Rules with respect to portfolio margining, breach of fiduciary duty as to Third-Party Profit Sharing Plans and violation of the Employee Retirement Income Security Act of 1974, breach of fiduciary duty as to IRA funds and violation of Section 413 of the Employee Retirement Income Security Act of 1974, unauthorized trading and non-compliant opening transactions, undue concentration of account funds, breach of contract, breach of fiduciary duty, negligence, common law fraud, and lack of supervision." (Dkt. 1-1, Ex. 2, pgs. 27-28.)

Newedge's counterclaim, and ordered the parties to bear their own costs and expenses (other than forum fees) incurred in the matter. (Dkt. 1-1, Ex. 2.)

Vega timely filed suit in the Circuit Court of Cook County, Illinois, seeking to vacate the Award pursuant to Section 12 of the Illinois Uniform Arbitration Act ("IUAA"), 710 ILCS 5/12 *et seq*. Vega alleges that the Award is invalid because (1) it was procured by fraud, corruption, or other undue means; (2) of evident partiality exhibited by Arbitrators Jeffrey W. Fink and Daniel R. Formeller; (3) the Arbitrators exceeded their powers; (4) the Arbitrators refused to hear evidence material to the controversy; (5) it is against the manifest weight of the law; and (6) the Arbitrators failed to render a decision on one of the claims. Newedge timely removed the action to this Court and filed an opposition to Vega's application to vacate the award as well as a motion to confirm the Award pursuant to Section 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, and 710 ILCS 5/12(d).

## STANDARD

The language under both the FAA and the IUAA is essentially the same. *See Gillispie v. Vill. of Franklin Park*, 405 F. Supp. 2d 905, 909 (N.D. Ill. Dec. 13, 2005). "When a plaintiff's claim is covered by an arbitration agreement, the relevant body of law is the [FAA]." *Vazquez v. Central States Joint Bd.*, 547 F. Supp. 2d 833, 865 (N.D. Ill. 2008). The FAA "governs the enforcement, validity, and interpretation of arbitration clauses in commercial contracts in both state and federal courts." *Jain v. de Méré*, 51 F.3d 686, 688 (7th Cir. 1995). "If there is an agreement to arbitrate, and the issues presented to the arbitrator fell within that agreement, courts may overturn the arbitrator's award only on very narrow grounds." *Flexible Mfg. Systems Pty. Ltd. v. Super Products Corp.*, 86 F.3d 96, 99 (7th Cir. 1996). Judicial review of arbitral awards is very limited. Courts may vacate an arbitral award in only four scenarios:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. §10(a).

To prove fraud, Vega must show that the alleged fraud was "(1) not discoverable upon the exercise of due diligence prior to the arbitration; (2) materially related to an issue in the arbitration; and (3) established by clear and convincing evidence." *Gingiss Int'l v. Bormet*, 58 F.3d 328, 333

3

(7th Cir. 1995). To demonstrate "evident partiality," Vega must show that an "arbitrator's bias is 'direct, definite and capable of demonstration rather than remote, uncertain, or speculative.'" *Harter v. Iowa Grain Co.*, 220 F.3d 544, 553 (7th Cir. 2000). To demonstrate that the arbitrators "exceeded their power," Vega must show that the arbitrator acted outside the scope of his or her contractually delegated authority. *Oxford Health Plans LLC, v. Sutter*, 569 U.S. 564, 570 (2013). An arbitrator violates Section 10(a)(4) and shows a "manifest disregard for the law" when the arbitrator "directs the parties to violate the law." *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 268-69 (7th Cir. 2006) (internal citations omitted).

Confirmation of arbitration awards is "usually routine or summary." *Hasbro, Inc. v. Catalyst USA, Inc.*, 367 F.3d 689, 691-92 (7th Cir. 2004). "Factual or legal error, no matter how gross, is insufficient to support overturning an arbitration award." *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 563 (7th Cir. 2008).

## ANALYSIS

While Vega claims a litany of alleged errors, they essentially fall into three categories: (1) the Panel's orders on discovery and sanctions; (2) Arbitrator Finke's classification; and (3) Vega's ERISA and IRA claims. The Court will address each in turn.

### I. The Panel's rulings on discovery and sanctions

Vega takes issue with several of the Panel's rulings on discovery, including sanctions and the Panel's alleged refusal to rule on Vega's Unauthorized Trading claim. Vega says that, as a result of the rulings, the Award is invalid and vacatur is required because (1) the Award was procured by "fraud, corruption or other undue means," (2) Arbitrator Formeller exhibited "evident partiality," (3) the Panel "exceeded its powers," and (4) the Panel engaged in "manifest disregard for the law."

Newedge responds that Vega's claims lack both evidentiary and legal support and that there is no basis to overturn an award based on discovery orders, sanctions, or other case-management decisions. Newedge further says that Vega had a full and complete opportunity to be heard because the Panel issued the rulings after full briefing and, at times, oral argument. The Court agrees.

As an initial matter, the Court notes that Vega has provided the Court with insufficient evidence to support these allegations. A party seeking to vacate an arbitration award bears the burden of proving that vacatur is warranted. *See Allied Beacon Partners, Inc. v. Bosco*, No. 13 C 5165, 2014 WL 551712, at *3 (N.D. Ill. Feb. 13, 2014) (finding plaintiff had failed to meet its evidentiary burden when it challenged specific portions of the record but failed to provide a copy of the arbitration transcripts). While Vega identifies a slew of alleged errors, Vega does so in sweeping and conclusory fashion. Moreover, Vega has provided the Court with little, if any, evidence or legal authority to support these claims.[5] The Court finds that Vega has not met its evidentiary burden here.

---

[5] Vega only provided the Court with a copy of the parties' Account Agreement, the Award, and four pages of the transcript of proceedings. (*See* dkts. 1-1 and 29.)

4

Given Vega's lack of evidentiary, Vega's arguments are unpersuasive and without merit. As previously noted, FINRA rules applied to the underlying arbitration proceedings. Pursuant to those rules, the Panel could set discovery deadlines, decide discovery disputes, impose sanctions, and request post-hearing briefs. *See* FINRA Rules 12500(c), 12501(b) (panel is authorized to set discovery schedules); FINRA Rule 12503(d) (noting that motions related to discovery are generally heard by one arbitrator, the Chairperson); FINRA Rules 12212(c), 12504(d), (e), 12511 (panel may impose sanctions); FINRA Rule 12608 (panel may request submissions from the parties after the hearing is held). The Panel's rulings on discovery and sanctions were consistent with those rules.

Vega takes issue with the timing of the Award, arguing that the Panel delayed issuing it. Pursuant to FINRA rules, an arbitration panel "shall *endeavor* to render an award within 30 *business* days from the date the record is closed." *See* FINRA Rule 12904(d) (emphasis added). Here, the Panel issued the Award within 30 business days (the record closed on November 8, 2016, and the Award was issued on December 21, 2016). Even if the Panel had not timely rendered the Award, the rule states that a panel will "endeavor" to issue an award within that timeframe. This is not a mandatory requirement that might serve as a basis to vacate the Award.

Vega next takes issue with the Panel's alleged refusal to rule on Vega's Unauthorized Trading claim. Vega contends that the Panel never gave Vega any warning that it would dismiss Vega's Unauthorized Trading claim as a discovery sanction (or, alternatively that the Panel would deny Vega leave to amend the First Amended Statement of Claim to include the Unauthorized Trading claim). Without a more complete record, it is difficult for the Court to discern whether the Panel dismissed the claim (as asserted by Vega) or whether the Panel simply denied Vega leave to add the claim (as argued by Newedge). The four pages of transcripts provided to the Court by Vega show that Arbitrator Formeller sought to clarify the ruling on the Unauthorized Trading claim. Arbitrator Formeller stated,

> The claimant's claim for unauthorized trading, the amendment to the pleading, was denied primarily on the basis of the late production of documents in contravention of a number of previous orders that the Panel had issued in discovery and related issues.
>
> So I wanted to be clear about *adding that to my list of reasoning* that the Panel went through at the time that it issued its orders and made its decisions that had been memorialized in the orders here.

(Dkt. 29-1, pgs. 2-3) (emphasis added). The Court does not have the full list of reasoning and will not engage in guesswork.

As noted, to make a showing of "fraud, corruption or other undue means," Vega must show that the alleged fraud was "(1) not discoverable upon the exercise of due diligence prior to the arbitration; (2) materially related to an issue in the arbitration; and (3) established by clear and

5

convincing evidence." *Gingiss Int'l*, 58 F.3d at 333. Vega has failed to do so. As for its claims of "evident partiality," Vega must show that an "arbitrator's bias is 'direct, definite and capable of demonstration rather than remote, uncertain, or speculative.'" *Harter*, 220 F.3d at 553. Again, Vega has failed to do so. Next, to show that the Panel "exceeded its powers," Vega must demonstrate that the arbitrator acted outside the scope of his or her contractually delegated authority. *Oxford Health Plans LLC*, 569 U.S. at 570 (2013). Vega has not done so. And, finally, to show that the Panel engaged in "manifest disregard for the law," Vega must show that the arbitrator "direct[ed] the parties to violate the law." *Wise*, 450 F.3d at 268-69 (7th Cir. 2006) (internal citations omitted). Vega has not made such a showing.

In sum, the Court finds no reason to vacate the Award based on the Panel's rulings on discovery and related matters.

## II. Arbitrator Finke

At the outset of the underlying arbitration, Arbitrator Finke was classified as a "public arbitrator" under the FINRA Code of Arbitration Procedure for Customer Disputes. Three years later, on October 18, 2016 (after the arbitration hearing had concluded but before entry of the Award), the parties learned that Arbitrator Finke no longer qualified as a "public arbitrator" under a revised definition of FINRA Rule 12100, effective June 26, 2015. Neither party objected to or challenged the disclosure at that time. Two months later, the Panel issued the Award.

Vega now says that the disclosure (that Arbitrator Finke no longer qualified as a "public arbitrator") amounts to "evident partiality," shows that the arbitrators "exceeded their powers," and is indicative of "fraud and corruption." Vega says that it was entitled to learn about Arbitrator Finke's status within a reasonable period of time after the June 26, 2015 definition revision. Vega believes that earlier notice would have allowed it to adequately assess the Panel and determine whether it should have challenged the composition of the Panel before start of the arbitration hearing. Vega complains that the Panel ended up being improperly slanted more toward "industry arbitrators" than "public arbitrators."

Newedge responds that the disclosure was not problematic because the revised definition did not apply to pending cases, such as Vega's case. Newedge also argues that Vega has waived this issue because it did not immediately challenge it.

As an initial matter, the Court finds that Vega has waived this issue because Vega did not raise and/or challenge it during the underlying arbitration proceedings. *See Health Serv. Mgmt. Corp. v. Hughes*, 975 F.2d 1253, 1261 (7th Cir. 1992) (finding waiver when attorney learned of a prior relationship between a party and two arbitrators but waited two months to raise an objection).

Even so, the Court finds Vega's argument to be unpersuasive. When the SEC approved an amendment to the definition of "public arbitrator" in the Customer Code of Arbitration Procedure, it specifically noted that "for cases in which FINRA sent lists prior to June 26, 2015, FINRA will not change the classification status of non-public and public arbitrators based on the new definitions, and will not grant challenges for cause based solely on an arbitrator's reclassification." *See* FINRA Reg. Notice 15-18. Pursuant to the applicable FINRA rules and definitions, Arbitrator

6

Finke was considered a "public arbitrator" throughout the arbitration; his classification status did not change. Vega had no basis to challenge Arbitrator Finke's classification during the arbitration proceedings. Vega, likewise, has no basis to challenge it now.

Moreover, Vega has not shown "evident partiality," that the arbitrators "exceeded their powers," or that the Award was procured by "fraud and corruption." Vega has presented no evidence of direct and definite bias so as to prove "evident partiality." *See Harter*, 220 F.3d 544, 553 (7th Cir. 2000) (party must show that the "arbitrator's bias is 'direct, definite and capable of demonstration rather than remote, uncertain, or speculative.'"); *see also Azroui v. E*Trade Securities, LLC*, 499 Fed. Appx. 606, 607 (7th Cir. 2013) (even an appearance of bias from an adverse ruling is not a ground for vacatur). Instead, Vega's arguments are, at best, speculative in nature.

Vega also has not shown that the Panel "exceeded their powers." Vega has presented no evidence to support its claims that the arbitrators acted outside the scope of their authority. *See Oxford Health Plans LLC*, 569 U.S. 564, 570 (2013) (party must show that the arbitrator acted outside the scope of his or her contractually delegated authority). In fact, the arbitrators acted within the scope of the applicable FINRA rules. Pursuant to those rules, Arbitrator Finke was properly empaneled as a "public arbitrator" and properly classified as a "public arbitrator" in the Award.

Finally, to vacate the Award on the basis of fraud, Vega must show that the alleged fraud was "(1) not discoverable upon the exercise of due diligence prior to the arbitration; (2) materially related to an issue in the arbitration; and (3) established by clear and convincing evidence." *Gingiss Int'l*, 58 F.3d 328, 333 (7th Cir. 1995). Vega has not done so. Vega argues that the disclosure on October 18, 2016 (more than sixteen months after the revision of the rule and after the four-day hearing) is indicative of corruption or undue means because "there would be no reason for Arbitrator Finke to make the disclosure of his change in status to the parties in this case unless he were obligated to do so." (Dkt. 29, pg. 11.) Vega further says that, although the Panel should have been composed of at least two public persons, it was not. These allegations do not show fraud and are not enough to vacate the Award. Moreover, pursuant to the applicable FINRA rules, Arbitrator Finke was classified as a "public arbitrator" throughout the arbitration proceedings and the Panel was composed of two public persons.

For these reasons, the Court finds that the October 18, 2016 disclosure about Arbitrator Finke's status does not require vacatur of the Award.

## III. ERISA and IRA Claims

Vega next contends that the Award is invalid because the Panel engaged in "manifest disregard for the law," exhibited "evident partiality," and issued the Award through "corruption or undue means" when it denied Vega's ERISA and IRA claims. Vega says that it informed the arbitrators of the applicable law pertaining to the IRA, ERISA, and Custodial Accounts, but the Panel chose to ignore the law and act in manifest disregard for the law. Vega further complains that the Panel ruled against Vega without explanation and that the irregularities of the Award show that the Panel engaged in "evident partiality" and "corruption or undue means." Alternatively,

7

Vega argues that it is unknown whether the Panel ruled on the ERISA and IRA claims because the Panel did not explain its decision and that the irregularities create a "strong impression that the Panel did not meaningfully attempt to grapple with" these claims. (Dkt. 1-1, ¶ 58.) Vega argues, under this theory, that the Award must be vacated for failure to render a decision on one of more of the claims presented to the Panel.

Newedge responds that Vega's ERISA and IRA claims were fully explored in the arbitration—the parties submitted briefing on these issues prior to the hearing, the parties directly addressed these issues during the hearing, and the parties addressed these issues in post-hearing briefs. Newedge further says that it proved during the arbitration proceedings that ERISA was irrelevant—Vega was a hedge fund rather than an ERISA "employee benefit plan" and the Exchange rule for IRAs invoked by Vega (NYSE Rule 431(g)) created no private right of action and was not relevant. According to Newedge, the Panel properly denied these claims because they were not supported.

Once again, Vega has not made the requisite showing. Vega has provided the Court with no evidence and, likewise, offers scant legal authority to support this argument. Vega first alleges that the Panel showed a "manifest disregard for the law" because it informed the Panel about the applicable law, but the Panel chose to ignore the law. Vega misses the mark here. An arbitrator shows a manifest disregard for the law when he or she directs the parties to violate the law. *See Wise*, 450 F.3d at 268-69; *see also Johnson Controls, Inc. v. Edman Controls, Inc.*, 712 F.3d 1021, 1026 (7th Cir. 2013) ('even 'manifest disregard for the law is not a ground on which a court may reject an arbitrator's award' unless it orders parties to do something that they could not otherwise do legally."). Vega does not attempt to show, or even allege, that the Panel directed the parties to violate the law. Instead, Vega's allegations that the Panel chose to ignore the law are based on pure speculation. This is not enough to overturn an arbitration award.

Vega next complains that the Panel engaged in "evident partiality" and "corruption or undue means" because the Panel did not provide an explanation for the Award. In the alternative, Vega argues that there is a strong impression that the Panel did not give meaningful consideration to the ERISA and IRA claims because the Award was issued without explanation. However, the Account Agreement states that the arbitrators do not have to state the reason(s) for the Award. (*See* dkt. 1-1, Ex. 1, ¶ 69(D).) Moreover, an arbitrator is not obligated to discuss every issue, and many arbitrations end with an award saying who won but without providing reasons. *See Affymax, Inc. v. Ortho-McNeil-Janssen Pharm., Inc.*, 660 F.3d 281, 285 (7th Cir. 2011); *see also Shearson Hayden Stone, Inc. v. Liang*, 653 F.2d 310, 312 (7th Cir. 1981) ("The arbitrators gave no reasons for their award, but they are not required to do so."). Further, the parties extensively addressed the ERISA and IRA claims throughout the arbitration proceedings via pre-hearing briefing and testimony during the hearing. The Panel even requested post-hearing briefing on this exact issue.

In sum, Vega's contention that the Panel ignored the law or, alternatively, did not rule on the ERISA and/or IRA claims is unsupported and without merit. There is no reason for this Court to vacate the Award based on these allegations.

## IV. Newedge's Motion to Confirm the Award

Newedge has filed a motion to confirm the Award pursuant to Section 9 of the FAA, 9 U.S.C. § 9, and 710 ILCS 5/12(d). Having met those requirements, the Court grants Newedge's motion, confirms the Award, and converts the Award to judgment.

## CONCLUSION

For the foregoing reasons, the Court denies Vega's application to vacate the arbitration award [1] and grants Newedge's motion to confirm the arbitration award [14]. The FINRA arbitration award (FINRA No. 13–02179) is confirmed and converted to judgment. Civil case terminated.

**SO ORDERED.**                                          **ENTERED: June 7, 2019**

_____
**HON. JORGE ALONSO**
**United States District Judge**